UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BLIV, INC. d/b/a LECTRO ENGINEERING AND REAL BLIV, LLC, </br></br>    Plaintiff, </br></br> v. </br></br> THE CHARTER OAK FIRE INSURANCE COMPANY, </br></br>    Defendant. | ) ) ) ) ) ) ) Case No. 4:22CV869 HEA ) ) ) ) ) ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's *Daubert* Motion to Exclude Expert Reports, Testimony and Opinions of Brian Johnson, P.E., [Doc. No, 42]. Plaintiff opposes the Motion, and on November 30, 2023, the Court heard arguments on the Motion. For the reasons set forth below, the Motion will be granted.

### **Facts and Background**[1]

Plaintiff summarizes its claims as follows:

Plaintiff is a plastics production and manufacturing company operating out of a commercial building located at 1643 Lotsie Boulevard, St. Louis, Missouri

---

[1] The recitation of facts is set forth for the purpose of this motion only. It in no way eliminates the necessary proof of facts in later proceedings.

63132 (the "Property"). The roof of the Property consists of a Thermoplastic Polyolefin (TPO) membrane as the primary water-proofing layer, with fiberboard and additional supporting materials directly below it.

Plaintiff procured an insurance policy for the building that was underwritten by Defendant and was in effect from April of 2021 to February of 2022. At the time of purchase of both the Property and insurance policy, the Property was allegedly in good condition.

Plaintiff claims that on July 9, 2021, the Property and its roof were damaged in a severe wind and hailstorm. Plaintiff promptly notified Defendant of the loss on July 21, 2021 after noticing leaking and damage to the roof. On August 31, 2021, a claims adjuster for Defendant, inspected the Property along with Plaintiff's roofer and contractor. According to Plaintiff, the adjuster noted hail damage to the flashing, vents, and HVAC units of the Property. He also noted that the contractor showed him evidence of wet and damaged fiberboard under the TPO allegedly caused by hail strikes. The adjuster hired an engineering firm to further investigate the damage.

A month later, Isaac Gaetz, with Vertex Engineering, investigated the property for leaking and damage while it was raining. Mr. Gaetz determined that the damage to the Property was the result of long-term wear and tear. Mr. Gaetz issued his report to Defendant on September 28, 2021 and Plaintiff's claim was

denied on September 29, 2021. Litigation followed. Plaintiff has brought claims of breach of contract and vexatious refusal to pay. Brian Johnson, P.E. was designated by Plaintiff as an expert on causation and damages.

Defendant moves to strike Mr. Johnson as an expert. Defendant does not challenge Mr. Johnson's qualifications as an expert witness, rather, Defendant urges striking him because Defendant claims Mr. Johnson's report is unreliable in that it is not based on sufficient facts and data.

## Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See* Fed. R. Evid. 702; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. "If

experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.*

The proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony" and favors admission over exclusion. *Id*. (internal quotation marks omitted). The determination as to the admissibility of expert testimony is within a district court's sound discretion. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997).

A district court must ensure that testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. When making the reliability determination, a court may evaluate whether the expert's method has been tested or subjected to peer review and publication, the method's known or potential rate of error, and the method's general acceptance. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (citing *Daubert*, 509 U.S. at 593–94). These factors are not exhaustive, and a court must evaluate the reliability of expert testimony based on the facts of the case. *Id.* A court also may consider "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and

4

whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008) (internal quotation marks omitted). When weighing these factors, a district court must function as a gatekeeper to separate "expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).

Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case," *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006), such that the testimony is "so fundamentally unsupported that it can offer no assistance to the jury," *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (internal quotation marks omitted). But disputes about the factual basis of an expert's testimony ordinarily implicate the credibility—not the admissibility—of the testimony. *Sappington*, 512 F.3d at 450; *see also Minn. Supply Co.*, 472 F.3d at 544.

Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend in Rule 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) ("*Daubert* and

5

Rule 702 thus greatly liberalized what had been the strict ... standards for admission of expert scientific testimony."). As long as the expert testimony "rests upon good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson*, 754 F.3d at 562 (citations and quotations omitted). The exclusion of expert testimony is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury[.]" *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citations and quotations omitted).

## Discussion

Mr. Johnson's only visit to the property occurred on May 30, 2023, whereas the subject hailstorm occurred almost two years prior on July 9, 2021. The total time of his inspection was one and a half hours. He did not inspect the inside of the building. In his report, Mr. Johnson bases his conclusion that the interior of the building was damaged by the storm because interior components are included in the ARS estimate.

He did not review maintenance records from any time before or after the storm, nor does he know if any repairs were completed after the storm. Mr. Johnson assumed any repairs to the roof were performed before the storm. No maintenance records were reviewed for his report. He conducted no interviews of

6

the owner of the business or any of its employees. Mr. Johnson relied on photographs taken by others to render his opinion relating to sublayer roofing materials.

Mr. Johnson testified he did not observe or identify any failed seams, flashings, punctures, splits, or tears in the roof during his inspection, therefore, he ruled out failed roof seams as a cause of the damage. He did, however, admit that he did not review the Vertex's Roof Condition Assessment Supplement and the photographs corresponding to it, dated March 21, 2022. This supplement includes a photograph depicting a failed roof seam with visible water buddling from the roof seam.

Plaintiff argues that weather data indicating the possible presence of hail on the date of the storm gives credence to Mr. Johnson's approach wherein he rules out the possibility that a previous or subsequent storm damaged the roof, but he repeatedly acknowledges that he did not see any hail punctures or fractures to the roof. Nor did he find any evidence of anvil strikes to the roof. Plaintiff argues that Mr. Johnson's opinion is a thorough and systematic elimination of other causes for the damage, his conclusion that the damage must have been caused by the storm remains speculative in light of his failure to determine whether any damage occurred before or after the storm prior to his inspection. Mr. Johnson's opinion

7

that hail may have damaged the roof membrane is not based on facts and data sufficient to help the finder of fact.

While Plaintiff is correct that an expert may rely on information collected by others, the Court agrees with Defendant that complete reliance is insufficient to establish Mr. Johnson's opinion will aid the jury in its fact-finding duty. Mr. Johnson includes a single photograph in his report.

Mr. Johnson did not perform any independent testing regarding his opinion that the lack of physical damage to the roof membrane does not preclude hail damage. Rather, he relied on roofing literature, *i.e.* marketing materials from a membrane manufacturer, to conclude fiberboard is more susceptible to hail impact damage. This reliance establishes a failure in methodology in reaching his conclusions. Indeed, Mr. Johnson did not verify any of this marketing literature in any manner.

Likewise, Mr. Johnson conducted no independent testing with respect to the interior of the building. There are no concrete reasons for Mr. Johnson's conclusion that there must have been interior damage from the storm because interior damage was included in the estimate.

Mr. Johnson, while highly qualified to render an opinion, has not provided an opinion which will satisfy the requirements of *Daubert* and Rule 702. Vigorous cross examination as to Mr. Johnson's credibility will not alleviate the lack of

sufficient facts and data and methodology.  The report is based on an exterior inspection, photographs taken by others, data that is too remote in time or substance to assist in any meaningful factual analysis.

## Conclusion

Based upon the foregoing, the Court concludes Mr. Johnson's opinion will not assist the trier of fact to understand the evidence or to determine a fact in issue. Mr. Johnson's opinion is not based upon sufficient facts or data and is not the product of reliable principles and methods as is required by Rule 702.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Daubert* Motion to Exclude Expert Reports, Testimony and Opinions of Brian Johnson, P.E., [Doc. No, 42], is **GRANTED**.

Dated this 18th day of December 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE