UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BLIV, INC. d/b/a LECTRO ENGINEERING AND REAL BLIV, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:22CV869 HEA ) |
| THE CHARTER OAK FIRE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No, 68]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion will be granted.

**Facts and Background**

On December 18, 2023, the Court granted Defendant's Motion to Exclude Expert Reports, Testimony, and Opinions of Brian Johnson, P.E., after conducting a hearing on the motion. In its Opinion, the Court detailed its analysis and reasoning for granting the Motion. Plaintiff's Motion to Reconsider was denied on June 17, 2024. Defendant now moves for summary judgment based on uncontested material facts in the record. In response to the Motion, Plaintiff relies on Mr. Johnson's Report and testimony. Because the Court has excluded Mr. Johnson as

an expert in this matter, Plaintiff may not rely on him to controvert the Motion for Summary Judgment. As such, the Court finds the following uncontested material facts.

Charter Oak issued a Commercial Insurance Policy to Plaintiff, having policy number Y-630-0S834428-COF-21, with an effective date of April 30, 2021, and an effective cancellation date of February 14, 2022 ("the Policy"). The Policy was issued on the commercial building located at 1643 Lotsie Blvd., Saint Louis, Missouri 63132 ("Subject Property" or "the property").

On July 21, 2021, Plaintiff notified Charter Oak of an alleged wind/hail loss at the Subject Property reported to have occurred on or about July 9, 2021. On July 23, 2021, Charter Oak and Plaintiff mutually agreed to schedule an inspection of the Subject Property to be held on August 31, 2021.

On August 31, 2021, Jake Fetsch, the claims representative assigned to Plaintiff's claim, inspected the Subject Property. Charter Oak inspected the Subject Property forty-one (41) days after receiving notice of Plaintiff's claim.

Plaintiff's contractor, Dylan Lucas and/or other representatives from Eco Roof and Solar, and an employee of Ladder Now were present at the inspection on August 31, 2021.

Charter Oak's inspection revealed some hail damage to the soft metal components and/or fixtures on the roof, including the cap flashing around the

perimeter of the Subject Property, four roof vents, and the air conditioner condenser fins on one HVAC unit. Charter Oak's inspection did not reveal any hail damage to any other material or component of the roof system. Charter Oak estimated the replacement cost value of covered loss and damage to the property at $774.57. The Policy has a $2,500.00 applicable deductible.

On August 31, 2021, Charter Oak retained Mr. Isaac Gaetz, P.E., of the Vertex Companies, to complete an evaluation of the Subject Property and assist in determining the cause of alleged damage to the Subject Property. On September 21, 2021, Mr. Gaetz inspected the Subject Property.

Mr. Gaetz concluded the alleged loss and damage to the roof and underlying insulation was not caused by and did not result from the storm event of July 9, 2021. Mr. Gaetz did not observe any torn, missing, inflated, or creased roof membrane. There were no concentric circular fractures, star fractures, or other punctures to the roof membrane indicating it sustained hail impacts and related hail damage. Mr. Gaetz did not observe any hail damage to the solar array on the roof of the Subject Property. Mr. Gaetz's inspection revealed the roof and underlying insulation were damaged by long-term and ongoing water intrusion. Mr. Gaetz observed the insulation under the roof membrane to be friable and deteriorated. Mr. Gaetz observed corroded fastener heads under the roof membrane.

On September 21, 2021, Mr. Gaetz inspected the interior of the Subject Property. The interior of the Subject Property included acoustic ceiling tiles with water stains. The water stains on the ceiling tiles exhibited multiple, concentric stain fronts, indicative of long-term moisture intrusion. Mr. Gaetz observed the underside of the metal roof decking to be partially corroded. Mr. Gaetz observed a wide distribution of water intrusion in multiple areas of the building. The widespread moisture staining, and partially corroded metal roof decking indicated that moisture intrusion was a long-term condition throughout the Subject Property. The widespread moisture staining across multiple areas of the building indicated water intrusion at multiple locations, such as at failed seams and flashing.

The observed deteriorated roofing insulation and corroded fasteners would not result from moisture intrusion from the claimed date of loss. Mr. Gaetz determined, to a reasonable degree of scientific engineering certainty, that the roof and underlying insulation of the Subject Property were not damaged by hail and the alleged storm event of July 9, 2021. Mr. Gaetz determined, to a reasonable degree of engineering certainty, that the cause of damage to the roof and underlying insulation of the Subject Property was  long-term and ongoing water intrusion.

The Policy contains the following pertinent provisions:

***

C. EXCLUSIONS

\*\*\*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\*\*\*

h. Liquid Seepage or Leakage

Continuous or repeated seepage or leakage of water or other liquid, or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more.

\*\*\*

i.     Other Types of Losses

(1) Wear and tear;
(2) Rust, or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

\*\*\*

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c….

c. Faulty, inadequate or defective

(1) Planning…
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling; or
(4) Maintenance;

of part or all of any property on or off the described premises.

***

D. LIMITATIONS
The following limitations apply to all coverage forms and endorsements unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

***

c. The "interior of a building or structure", or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
(2) The loss or damage is caused by or results from thawing snow, sleet or ice on the building or structure.

J. DEFINITIONS

9. "Interior of a Building or Structure" means any portion of a building or structure that is within the exterior-facing surface material of the building or structure.

***

Mr. Gaetz's inspection revealed that one HVAC unit and some metal roof vent caps sustained some damage consistent with hail. Relying on Mr. Gaetz's findings and its own inspection(s) of the property, Charter Oak prepared an estimate for the replacement cost of the covered loss and damage to the Subject

6

Property. The estimate considered the removal and replacement of roof vent caps, the combing and straightening of condenser fins, debris removal, and labor.

Charter Oak estimated the cost to repair all covered loss and damage to the Subject Property to be $774.57, which is less than the applicable $2,500.00 deductible.

The Policy contains the following pertinent provisions:

***

F. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductible shown in the Declarations.

***

On October 5, 2021, Charter Oak sent Plaintiff an email enclosing correspondence, dated September 29, 2021, notifying Plaintiff payment would not be issued because the amount of covered loss and damage did not exceed the Policy's $2,500 deductible, and the remaining claimed loss and damage was not covered and/or specifically excluded under the terms and provisions of the Policy. Charter Oak informed Plaintiff of its coverage position two months after receiving Plaintiff's claim, and just one week after receiving Mr. Gaetz's report and findings.

On November 9, 2021, Charter Oak received a letter of representation from Plaintiff's counsel requesting a certified copy of the Policy.

7

Charter Oak received no further contact from Plaintiff or its counsel until February 15, 2022. On February 15, 2022, Charter Oak received a formal demand from Plaintiff, demanding immediate payment of $2,689,286.45 for claimed loss and damage to the interior and exterior of the Subject Property, allegedly resulting from the storm event of July 9, 2021. The demand enclosed a report, estimate, and photographs from Access Restoration Services ("ARS").

Following receipt of Plaintiff's demand of February 15, 2022, and at Plaintiff's request, Charter Oak agreed to reinspect the Subject Property and provide the claim additional consideration following the initial denial.

On March 14, 2022, Mr. Gaetz of Vertex and Mr. Michael Crutcher of Charter Oak reinspected the Subject Property. Mr. Gaetz reviewed several photographs contained in the ARS estimate.

During the March 14, 2021 inspection, Mr. Gaetz noted softness when walking upon multiple roof areas, which also exhibited elevated moisture readings. Mr. Gaetz observed isolated, random dents on the upper roof parapet caps, but none on the lower roof parapet caps. Mr. Gaetz observed moisture draining outward from a roofing seam on the upper roof. Mr. Gaetz was able to force water from the failed seam by walking on it. Mr. Gaetz observed three U-shaped patches to the roof, likely completed by ARS, which corresponded with elevated moisture readings and a soft texture. Mr. Gaetz did not observe punctures, linear tears, or

8

star-shaped tears in the roof membrane at the Subject Property during his inspection of March 14, 2022. Mr. Gaetz's inspection of March 14, 2022 revealed that moisture under the roof membrane was a widespread condition, which did not correspond with punctures, fractures, or visible damage to the roof. The moisture coincided with failed flashing and seams around parapet wall caps and roof vents and deficient roofing seams. Additionally, Mr. Gaetz noted the indentations portrayed in images from the ARS Report were consistent with mechanical impacts and footfalls, not hail. Mr. Gaetz concluded the claimed loss and damage was not caused by wind, hail, or the storm event of July 9, 2021. Mr. Gaetz did not observe any hail-caused penetrations, fractures, or tears in the roof membrane at either of his inspections. Based on the three separate inspections of the Subject Property, the additional claimed loss and damage was not caused by and did not result from any covered cause of loss.

On March 23, 2022, Charter Oak notified Plaintiff the coverage position remained unchanged, and payment would not be issued for the additional claimed loss and damage. Charter Oak informed Plaintiff of its coverage decision just two days after receiving Mr. Gaetz's supplemental evaluation.

Plaintiff and Charter Oak disagreed whether the claimed loss and damage is covered under the Policy. Plaintiff filed the instant action on July 6, 2022. Plaintiff disagrees with Charter Oak's coverage position and partial claim denial.

9

No one from Charter Oak was ever rude to the owner of BLIV, INC.

Charter Oak notified it of its claim decision within a couple of months of receiving notice of the loss.

Charter Oak and/or its representatives performed multiple inspections at the Subject Property.

## **Legal Standard**

Summary judgment is appropriate when there are no genuine disputes of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

To preclude the entry of summary judgment, the non-moving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The evidence is viewed "in the light most favorable to the nonmoving party," which includes drawing all reasonable inferences in that party's favor. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting

*Johnson v. Wells Fargo Bank, N.A*., 744 F.3d 539, 541 (8th Cir. 2014)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 255. A fact is material if it might affect the outcome of the lawsuit. *Id*. "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009).

## Discussion

For a plaintiff to establish prima facie case of insurance coverage, a plaintiff must show: "'(1) the insurer issued its policy to the insured, (2) the insured paid the premium, (3) a loss was caused by a peril the policy insures against, and (4) the insured have notice of the loss to the insurer as required by the terms of the policy.'" *Smith v. Zurich Am. Ins. Co*., No. 4:16-CV-00187-ERW, 2016 WL 6947491, at *4 (E.D. Mo. Nov. 28, 2016), (quoting *Country Mut. Ins. Co. v. Omicron Capital, LLC*, No. 4:13–CV–1476–SPM, 2015 WL 1894997, at *7 (E.D. Mo. Apr. 27, 2015) (citing *Wright v. Blevin*, 380 S.W.3d 8, 11(Mo. Ct. App. 2012)).

Plaintiff brought this action seeking insurance coverage for alleged damages to its commercial building. Plaintiff contends a hailstorm on July 9, 2021 caused internal and external damage.

11

There is no dispute that Defendant issued the policy nor that Plaintiff paid the premium., Rather, the issue before the Court is whether the loss was cause by a peril the policy insured against.

The admissible evidence in the record establishes that the loss was not caused by a peril the policy insured against. Defendant's evidence establishes that roof membrane, insulation, fasteners, metal roof decking, flashings, and seams were deteriorated and corroded. Defendant's expert identified that the roof membrane did not have any fractures or punctures which would be consistent with the impact of hail hitting the roof membrane. The moisture intrusion directly coincided with faulty parapet wall caps and deficient and/or faulty roof seams and flashings. There were at least two areas of water intrusion that directly correlated with defective roof seams and flashings on the roof surface.

During the March 14, 2021 inspection, Defendant's expert Mr. Gaetz noted softness when walking upon multiple roof areas, which also exhibited elevated moisture readings. Mr. Gaetz observed isolated, random dents on the upper roof parapet caps, but none on the lower roof parapet caps. He observed moisture draining outward from a roofing seam on the upper roof. He was able to force water from the failed seam by walking on it. Mr. Gaetz's inspection of March 14, 2022 revealed that moisture under the roof membrane was a widespread condition, which did not correspond with punctures, fractures, or visible damage to the roof.

The underside of the metal roof decking also showed evidence of long-term corrosion.

Based on his inspection and investigation, Mr. Gaetz concluded the claimed damage was not caused by the hailstorm, nor by any other peril insured against. While Plaintiff relies on the inadmissible opinion of Mr. Johnson to attempt to controvert Mr. Gaetz's conclusions, Plaintiff has not presented admissible evidence to do so.

The record establishes that Defendant recognized some hail damage. However, the amount of the hail damage did not exceed the policy deductible of $2,500.00. Defendant's assessment of the damages amounted to $774.57, clearly well below the deductible amount agreed to in the policy. Plaintiff again relies on the excluded report of Mr. Johnson to argue to the contrary, and as such has not established any disputed material facts.

As the Eighth Circuit Court of Appeals has observed

> "[u]nder Missouri law, vexatious refusal is derivative of a breach-of-contract claim. There can be no recovery for vexatious refusal where there is no judgment for the plaintiff on the insurance policy." *Aziz v. Allstate Ins. Co.*, 875 F.3d 865, 869 (8th Cir. 2017) (citation omitted). But in Aziz, we decided that a vexatious-refusal claim must fail when an insured loses on a breach-of-contract claim. *Id*.

*Acad. Bank, N.A. v. AmGuard Ins. Co.*, No. 23-1375, 2024 WL 4097537, at *3 (8th Cir. Sept. 6, 2024). Necessarily, therefore, Plaintiff's vexatious refusal to pay claim falls with its breach of contract claim.

13

## Conclusion

Based upon the foregoing, Defendant is entitled to judgment as a matter of law as to Plaintiff's claims against it. The policy of insurance was not breached since Plaintiff failed to present admissible evidence that the loss was caused by a peril covered under the policy. Further, the minimal loss suffered as a result of hailstorm is not covered under the policy because the amount of the damage was less than the policy's $2,500.00 deductible. As a derivative claim, Plaintiff's vexatious refusal to pay claim fails with the breach of insurance contract claim

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 68] is **granted**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment, [Doc. No. 44], is **denied as moot**.

A separate judgment in accordance with the Opinion, Memorandum, and Order is entered this same date,

Dated this 23rd day of September, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE